# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

PACIFIC COAST MARINE
WINDSHIELDS LIMITED,

                    Plaintiff,

-vs-                                                        Case No. 6:10-cv-1285-Orl-28DAB

MALIBU BOATS, LLC, MARINE
HARDWARE, INC., TRESSMARK, INC.,
MH WINDOWS, LLC, and JOHN F.
PUGH,

                    Defendants.
_____/

## ORDER

The instant controversy involves allegations of patent infringement, tortious interference with business relationships, trade libel, and deceptive trade practices. Specifically, Plaintiff Pacific Coast Marine Windshields Limited ("PCMW") contends that Malibu Boats, LLC ("Malibu"), Marine Hardware, Inc. ("MH"), MH Windows, LLC ("MH Windows"), Tressmark, Inc. ("Tressmark"), and John F. Pugh (collectively "Defendants") infringed PCMW's design and utility patents by manufacturing and selling marine windshields identical to those Malibu previously purchased from PCMW.

Defendants now jointly seek transfer of the present action to the Eastern District of California ("EDCA"), arguing that the EDCA is clearly more convenient than the Middle District of Florida ("MDFL") in light of the location of the parties, the witnesses, and the relevant evidence. Having

considered all of the papers filed by the parties and the evidence presented, the Court finds that

Defendants' motion must be granted.[1]

**Background**

### I. Procedural Background

Plaintiff PCMW originally filed a five-count Complaint against Malibu, MH, and Tressmark

alleging: (1) infringement of United States Patent No. 7,418,917 ("the '917 patent"); (2)

misappropriation of trade secrets; and (3) copyright infringement. (Doc. 1). PCMW then filed an

Amended Complaint naming MH Windows and Pugh as additional defendants. (Doc. 37). In

response to the Amended Complaint, Defendants each filed an Answer, (Docs. 41-45), along with the

present Motion to Transfer Venue wherein the Defendants collectively argue that the instant action

has little substantive connection to the MDFL and that the EDCA is clearly more convenient in light

of the location of the relevant parties, witnesses, and evidence, (Doc. 46).

After the Motion to Transfer Venue was filed, the parties in Case No. 6:11-cv-133-Orl-

28GJK—PCMW, Malibu, MH, MH Windows, Tressmark, and Pugh—moved to consolidate that

action with the present action, arguing that the two cases involved multiple common questions of law

and fact including the same parties, the same accused products, the same allegedly infringing sales,

and the same alleged acts of conversion.[2] (Doc. 66). On June 22, 2011, the motion was granted and

the two cases were consolidated. (*Id.*). Following consolidation, PCMW filed a six-count Second

---

[1] The motions presently before the Court include: (1) Defendants' Joint Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Doc. 46) and (2) Plaintiff's Opposition to Joint Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Doc. 49).

[2] The three-count Complaint originally filed in Case No. 6:11-cv-133-Orl-28GJK alleged infringement of United States Patent No. 7,441,510 ("the '510 patent").

Amended Complaint alleging: (1) infringement of United States Patent No. 7,441,510 ("the '510 patent"); (2) infringement of United States Patent No. D555,070 ("the '070 patent"); (3) tortious interference with business relationships; (4) trade libel; and (5) violations of Florida's Deceptive and Unfair Trade Practices Act, § 501.201, *et seq.*, Florida Statutes. (Doc. 69).

## II. Patents at Issue

The '510 patent, titled "Marine Windshield Frame and Method of Manufacture," is a utility patent that issued on October 28, 2008. (Doc. 69 at 14). The '510 patent claims a marine windshield frame for curved or straight windshield glass mounted to a boat deck. (*Id.*). The '510 patent lists Darren Ashley Bach, Delta, British Columbia, Canada, as the inventor. (*Id.*). The Second Amended Complaint alleges that the '510 patent was licenced exclusively to PCMW. (*Id.* ¶ 12).

The '070 patent, titled "Marine Windshield," is a design patent claiming an ornamental design for a marine windshield. (*Id.* at 34). The '070 patent issued on November 13, 2007, and lists Darren A. Bach, Delta, British Columbia, Canada, as the inventor. (*Id.*). The Second Amended Complaint alleges that the '070 patent was exclusively licensed to PCMW in June of 2011. (*Id.* ¶ 13).

## III. Parties

Plaintiff PCMW is a Canadian corporation with its principal place of business in Vancouver, British Columbia, Canada. (*Id.* ¶ 5). PCMW manufactures windows for small boats and personal watercraft. (*Id.*).

Defendant Malibu is a California limited liability company with its principal place of business in Merced, California. (*Id.* ¶ 6). Malibu is a designer and manufacturer of water sports boats, including water ski boats and water boarding boats. (Doc. 46-1 ¶ 3). Defendant MH is a Washington

corporation involved in the business of manufacturing small boats. (Doc. 69 ¶ 10). While PCMW contends that MH's principal place of business in located in Ormond Beach, Florida, (*id.* ¶ 10), Pugh, the CEO of MH, declares that MH only maintains a warehouse and small machine shop in Ormond Beach and that its headquarters are located in Redmond, Washington, (Doc. 46-2 ¶¶ 2, 5). Defendant MH Windows is a Washington limited liability company with its principal place of business in Redmond, Washington. (*Id.* ¶ 2; Doc. 69 ¶ 7). MH Windows does not maintain any offices or employees within the MDFL. (Doc. 46-2 ¶ 4). Defendant Tressmark is a Florida corporation with its principal place of business in Orlando, Florida. (Doc. 69 ¶ 9). Tressmark is one of many distributors used by Malibu to sell its marine windshields. (*Id.* ¶ 19). Finally, Defendant John Pugh is the CEO of MH and a fifty-percent owner of MH Windows. (Doc. 46-2 ¶ 2). While Pugh maintains that he is a citizen and resident of the state of Washington, (*id.*), PCMW maintains that he is a resident of Florida, (Doc. 49 at 1).

### Analysis

Defendants seek transfer of the instant action to the EDCA pursuant to 28 U.S.C. § 1404(a), arguing that there is little connection between the instant action and the present forum and that the EDCA is clearly more convenient than the MDFL in light of the location of the parties, the witnesses, and the relevant evidence. (Doc. 46). In response, PCMW contends that Defendants' substantial ties to the MDFL and the strong deference granted to a plaintiff's choice of forum render transfer inappropriate. (Doc. 49 at 2).

"Change of venue in patent cases, like other civil cases, is governed by 28 U.S.C. § 1404(a)." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Section 1404(a) provides that "[f]or

the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quotation omitted). Accordingly, district courts are granted broad discretion in determining whether to transfer a case to another district. *England v. ITT Thompson Indus., Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988). Nonetheless, because federal courts traditionally afford the plaintiff's choice of forum considerable deference, "in the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

In order to determine the propriety of transfer under 28 U.S.C. § 1404(a), courts must engage in a two-step analysis. First, courts must determine whether the action could have been brought in the venue to which transfer is sought.[3] Second, courts must assess whether convenience and the interests of justice require transfer to the requested forum.[4] *Thermal Techs., Inc. v. Dade Serv. Corp.*, 282 F. Supp. 2d 1373, 1376 (S.D. Fla. 2003); *Jewelmasters, Inc. v. May Dep't Stores Co.*, 840 F. Supp. 893, 894-95 (S.D. Fla. 1993). In the Eleventh Circuit, courts have identified nine factors to evaluate when considering a motion to transfer venue under § 1404(a):

---

[3] The parties do not dispute that this action could have been brought in the Eastern District of California.

[4] Because a motion to transfer venue is a procedural matter not unique to patent law, the law of the regional circuit is applied. *In re TS Tech USA Corp.*, 551 F.3d at 1319; *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003).

(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005); *Sessions v. Atl. Recording Corp.*, No. 6:10-cv-1568-Orl-28GJK, 2011 WL 3754601, at *3 (M.D. Fla. Aug. 11, 2011). The Court will address each factor in turn.

## I. Convenience of the Witnesses

"The convenience of both the party and non-party witnesses is probably considered the single most important factor in [determining] whether a transfer should be granted." *Gonzalez v. Pirelli Tire, LLC*, No. 07-80453-CIV, 2008 WL 516847, at *2 (S.D. Fla. Feb. 22, 2008); *Cent. Money Mortg. Co. v. Holman*, 122 F. Supp. 2d 1345, 1346 (M.D. Fla. 2000) (finding that the convenience of the witnesses factor is given more weight than the convenience of the parties factor when considering a motion to transfer venue); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) ("The convenience and cost of attendance for witnesses is an important factor in the transfer calculus."). However, "[w]hen weighing the convenience of the witnesses, a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the court must qualitatively evaluate the materiality of the testimony that the witness may provide." *Trace-Wilco, Inc. v. Symantec Corp.*, No. 08-80877-CIV, 2009 WL 455432, at *3 (S.D. Fla. Feb. 23, 2009) (quotation omitted).

-6-

The evidence of record indicates that the activities of Malibu, MH,[5] and MH Windows that are relevant to the allegations of the Second Amended Complaint take place in either California or Washington, not Florida. (Doc. 46-2). For example, Malibu's current Chief Executive Officer ("CEO"), Jack Springer, submitted a declaration stating that Malibu's principal place of business and headquarters are located in Merced, California, and that substantially all of Malibu's technical personnel reside in California. (Doc. 46-1). Similarly, the declaration of Mr. Pugh states that "[s]ubstantially all of MH's employees, including all design personnel, reside in the state of Washington." (Doc. 46-2 ¶ 4); *see Motorola Mobility, Inc. v. Microsoft Corp.*, No. 10-24063-CIV-MORENO-BROWN, 2011 WL 3611825, at *3 (S.D. Fla. Aug. 17, 2011) (finding that because Microsoft is located in Washington, the majority of the witnesses who were involved with the products and patents at issue in the complaint are located in Washington). Defendants have also identified specific party and non-party witnesses for whom the EDCA would clearly be more convenient. For example, Defendants identify Neil Gilbert, a Malibu contractor residing on the west coast of Canada. Gilbert worked with Dan Gasper, Malibu's research and development manager, to generate the first computer-aided design ("CAD") drawing for the accused products. (Doc. 46-1 at 2). Defendants also identify Bob Alkema, who resides in the EDCA and who was Malibu's CEO during the time period relevant to the alleged infringement. (Doc. 46 at 10; Doc. 46-1 ¶ 7). Alkema was involved with the design and development of the windshields supplied by PCMW and the windshields supplied by MH

---

[5] While PCMW maintains that MH's principal place of business is located in Ormond Beach, Florida, the declaration of Mr. Pugh, the CEO of MH, states that MH has a single employee located in Florida and that this employee has not worked on any matter related to the products accused of infringing in the present case. (Doc. 46-2 ¶ 4). Furthermore, Pugh maintains that the warehouse and machine shop located in Ormond Beach were never used to make, design, or store the accused products. (*Id.* ¶ 5). PCMW provides no evidence to the contrary.

Windows. (Doc. 46 at 10). *See Trace-Wilco*, 2009 WL 455432, at *3 (finding the convenience of the witnesses factor to weigh in favor of transfer where, "[u]pon review of the parties' filing, it appears that most of the witnesses that will be knowledgeable about the *infringement* issues are located in northern California").

In comparison to the numerous witnesses residing in and around the EDCA, PCMW has identified few witnesses who reside in or around the MDFL. While Defendant Tressmark is a Florida company with its principal place of business within the MDFL, Tressmark is identified in the Second Amended Complaint as only one distributor in Malibu's "well-established distribution system," (Doc. 69 ¶ 19), and the evidence of record demonstrates that Malibu has similar dealers in other locations throughout the United States, including a dealer within the EDCA. (Doc. 46-1 ¶ 10). In addition, while PCMW maintains that Tressmark employees will be expected to testify about the sale and commercial success of the accused products, there is no evidence to support a finding that Tressmark or its employees were involved in the design, development, or manufacturing of the accused products—the activities most relevant to the infringement allegations—and, unlike Malibu, Tressmark is not accused of committing tortious interference, trade libel, or deceptive and unfair trade practices. (Doc. 9 at 9-10; Doc. 69). Thus, the materiality of the testimony provided by any Tressmark employees will be limited.[6] Finally, PCMW has not identified any witness whose testimony it will not

---

[6] While PCMW contends that Pugh is a resident of Florida as evidenced by his status as a registered agent for MH in the state of Florida, Pugh has submitted a contrary declaration stating that he is a resident of Washington. (Doc. 49 at 7; Doc. 46-2 ¶ 2). Even if the Court were to assume that Pugh is a resident of Florida, the convenience of the witnesses factor would still favor transfer.

be able to obtain in the EDCA.[7] Accordingly, the convenience of the witnesses factor weighs in favor of transfer. *See Motorola Mobility*, 2011 WL 3611825, at \*3 ("Microsoft has established that there are more witnesses who will be inconvenienced by maintaining the case in this District, and in light of Motorola's failure to identify any particular witness whose testimony it will not be able to obtain in Washington, the Court finds that this factor [] weighs in favor of transfer."); *Cellularvision Tech. & Telecomms., L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1191 (S.D. Fla. 2007) (reasoning that while plaintiff listed several Florida witnesses, because "most of the witnesses that will be knowledgeable about nationwide infringement issues . . . are located in Arkansas," "[i]t seems likely that more witnesses will be inconvenienced by conducting this litigation in Florida than would be the case in Arkansas").

## II. Ease of Access to Sources of Proof

To examine "the relative ease of access to sources of proof . . . , the district court must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of the evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action." *Trace-Wilco*, 2009 WL 455432,

---

[7] PCMW appears to contend that Defendants must establish that the relevant witnesses reside within the EDCA, not merely close to the EDCA, in order to demonstrate that this factor supports transfer from the MDFL to the EDCA. The Court disagrees. The convenience of the witness factor does not consist of a formalistic tally of the number of witnesses residing in the two competing forums to the exclusion of witnesses residing in different forums. Rather, the factor turns on the relative convenience of the competing forums to the witnesses and the materiality of the testimony to be provided by those witnesses. *See, e.g., Polyform A.G.P. Inc. v. Airlite Plastics Co.*, No. 4:10-CV-43 (CDL), 2010 WL 4068603, at \*4 (M.D. Ga. Oct. 15, 2010) (finding that "[a]lthough most of these witnesses reside outside of the Middle District of Georgia, it may be more convenient for them to travel from Atlanta, Georgia and Florida to the Middle District of Georgia than it would be for them to travel to Omaha, Nebraska").

at *4 (quotation omitted). Here, the uncontested evidence of record indicates that the vast majority of documents relevant to the instant action are located in and around the EDCA. For example, most of Malibu's documents regarding the design, development, sale, and marketing of the accused products, including the CAD drawings, are located in Merced, California. (Doc. 46-1 ¶ 5). In addition, several failed windshields supplied to Malibu by PCMW are located in Malibu's Merced, California facility, and the accused windshields currently manufactured by MH Windows are shipped to Malibu's Merced, California facility for storage. (*Id.* ¶¶ 6, 9). The majority of MH Windows' documents relating to the design and development of the accused windshields built and sold by MH Windows are located in Redmond, Washington, and none of these documents are located in Florida. (Doc. 46-2 ¶ 3). Samples of the accused windshields built by MH Windows are also located in Redmond, Washington. (*Id.*). *See TS Tech*, 551 F.3d at 1321 (applying Fifth Circuit law in finding that where the "vast majority of physical and documentary evidence relevant to [the] case will be found in Ohio, Michigan, and Canada, and none of the evidence is located in Texas," the access to evidence factor weighed in favor of transfer to the proposed Ohio venue).

In response to this evidence, PCMW contends that "Defendants fail to consider relevant documents concerning the sale of the accused products and specimens of the accused product in possession of Tressmark in this district." (Doc. 49 at 9). While PCMW is correct in noting that such evidence will have some relevance to the present action—particularly as to the secondary considerations of nonobviousness and potential damages—as previously discussed, the vast majority of evidence most relevant to the allegations in the present action is located in and around the EDCA,

not the MDFL.[8] (*Id.*). Accordingly, the second factor also weighs in favor of transfer. *See Suomen Colorize Oy v. Dish Network L.L.C.*, No. 8:10-cv-2406-T-33MAP, 2011 WL 2670188, at *4 (M.D. Fla. July 8, 2011) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." (quoting *In re Genentech*, 566 F.3d at 1345)).

### III. Convenience of the Parties

With respect to the convenience of the parties, the evidence of record demonstrates that Malibu is heavily tied to the EDCA, and that MH, MH Windows, and Pugh are heavily tied to the nearby state of Washington. *See Polyform*, 2010 WL 4068603, at *5 ("The convenience of the parties also weighs in favor of transfer. Defendant is a Nebraska corporation, and it would obviously be more convenient for Defendant to litigate there."). As previously discussed, while MH maintains an employee, a warehouse, and a small machine shop within the MDFL, MH's business within the Middle District of Florida does not include activities relevant to the present controversy. Rather, the activities of MH relevant to the present controversy occur in Redmond, Washington, and the individuals involved in these activities reside in and around Washington. *See Suomen Colorize*, 2011 WL 2670188, at *3-4 (finding the convenience of the parties factor to weigh in favor of transfer where the defendant was

---

[8] PCMW argues that the ease of access to proof factor should be "given little weight" in "these days of electronic discovery and electronic communications." (Doc. 49 at 9). The Court disagrees. The location of the majority of relevant physical samples in this case—the marine windshields—favors the EDCA. Moreover, the Federal Circuit has specifically rejected this so-called "antiquated era argument," finding that such an argument would improperly render the factor superfluous. *See In re Genentech*, 566 F.3d 1338, 1345-46 (Fed. Cir. 2009); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (Fed. Cir. 2008). This Court concurs with the analysis provided in *Genentech* and *Volkswagen*, finding that while electronic discovery may affect the weight of the "ease of access to proof" factor, this factor remains relevant to the § 1404(a) analysis.

headquartered in Colorado and the business relevant to the patent infringement controversy was conducted there). On the other hand, PCMW, a Canadian corporation with its principal place of business in Vancouver, British Columbia, Canada, presents no evidence or argument to support a finding that it will be inconvenienced by transfer to the EDCA. *See Cellulvarvision*, 508 F. Supp. 2d at 1189-90 (finding the convenience of the parties factor weighed in favor of transfer where plaintiff was headquartered outside of Florida, did not conduct business in Florida, and did not indicate why the Southern District of Florida would be a more convenient forum for the plaintiff, while defendants demonstrated that it was much more convenient for them to proceed in the proposed transfer forum). Accordingly, the convenience of the parties factor weighs in favor of transfer to the EDCA.

## IV. Locus of Operative Facts

The locus of operative facts factor strongly supports the motion to transfer. The focus of PCMW's Second Amended Complaint is the Defendants' alleged acts of infringement, and the uncontested evidence of record demonstrates that the vast majority of the activities relating to the alleged infringement take place in and around the EDCA. *See Polyform*, 2010 WL 4068603, at *5 (finding the locus of operative facts factor to favor transfer in a patent infringement action where the design, development, and marketing of the accused products as well as the majority of the manufacturing activities occurred in the transferee forum). PCMW provides no argument or evidence to support a contrary finding. *See Polyform A.G.P. Inc. v. Airlite Plastics Co.*, No. 4:10-CV-43 (CDL), 2010 WL 4068603, at *5 (M.D. Ga. Oct. 15, 2010) (finding the locus of operative facts supported the motion to transfer where the design, development, marketing, manufacturing, and sale of the accused product would be the primary issues in the patent infringement allegations and those activities occurred

-12-

in the district to which transfer was proposed); *AGSouth Genetics LLC v. Terrell Peanut Co.*, No. 3:09-CV-93 (CDL), 2009 WL 4893588, at *3 (M.D. Ga. Dec. 9, 2009) (finding the locus of operative facts factor favored transfer because the alleged acts of infringement happened in the transferee forum). Accordingly, the locus of operative facts factor weighs heavily in favor of transfer.

## V. Ability of Process to Compel the Attendance of Unwilling Witnesses

In the present case, no party argues that process will be needed to compel the attendance of unwilling witnesses. Accordingly, this factor is neutral.

## VI. Familiarity with Governing Law

The Second Amended Complaint includes three counts of patent infringement, an issue of federal law. Both federal district courts are equally familiar with patent law and competent to address the issue. However, the sixth count of the Second Amended Complaint alleges violations of Florida's Deceptive and Unfair Trade Practices Act, § 501.201, *et seq.*, Florida Statutes. While both district courts are competent to address this allegation, the MDFL is presumably more familiar with Florida's Deceptive and Unfair Trade Practices Act than the EDCA.[9] Accordingly, this factor weighs slightly against transfer.

## VII. Relative Means of the Parties

Neither party has submitted any evidence relating to the relative means of the parties. *Cf. Sessions*, 2011 WL 3754601, at *4 (finding the relative means of the parties factor to weigh in favor of transfer where the defendants provided an affidavit stating that litigating the matter in the present

---

[9] The Second Amended Complaint also includes allegations of "tortious interference" and "trade libel." (Doc. 69). It is unclear from the face of the Second Amended Complaint what law is to be applied to these counts and neither party argues that either the EDCA or the MDFL would be more or less competent to address these issues.

-13-

district would be a great expense and cause an undue burden on the defendant).  Accordingly, the relative means of the parties factor is neutral.

## VIII. Plaintiff's Choice of Forum

"Generally a 'plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations.'" *Cellularvision*, 508 F. Supp. 2d at 1189 (quoting *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996)).  However, "where a plaintiff has chosen a forum that is not its home forum, only minimal deference is required, and it is considerably easier to satisfy the burden of showing that other considerations make transfer proper." *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981)).  Similarly, "where the operative facts underlying the cause of action did not occur within the forum chosen by the plaintiff, the choice of forum is entitled to less consideration." *Windmere Corp. v. Remington Prods., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985); *see also Balloveras v. Purdue Pharma Co.*, No. 04-20360-CIV-MORENO, 2004 WL 1202854, at *1 (S.D. Fla. May 19, 2004) (giving plaintiff's choice of forum "less than normal deference . . . where the operative facts underlying the action occurred outside the district in which the action [was] brought").  In a patent infringement case, the operative facts underlying the cause of action are located where the alleged infringement occurred. *Trace-Wilco*, 2009 WL 455432, at *2-3 (referring to the location of operative facts in a patent infringement controversy as the "center of gravity of the accused activity"); *Amini Innovation Corp. v. Bank & Estate Liquidators, Inc.*, 512 F. Supp. 2d 1039, 1044 (S.D. Tex. 2007) (finding that "in intellectual property suits, which often focus on the activities of the alleged infringer, its employees, and its documents[,] the location of the alleged infringer's principal place of business is often the critical and controlling consideration in adjudicating transfer of venue motions");

-14-

*Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1260 (W.D. Wash. 2005) ("The district court ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." (quotation omitted)).

It is undisputed that the vast majority of operative facts underlying the present allegations occurred in either the EDCA or in the nearby state of Washington. While Tressmark, a distributor for Malibu, is located in the MDFL, the allegations relating to Tressmark's infringement relate only to the sale of accused products—specifically, those products manufactured by Malibu—and the evidence of record demonstrates that Malibu uses a number of similar distributors to sell its products, including distributors located in the EDCA. (Doc. 69 at 8-9). Thus, considering that the vast majority of the operative facts occurred in or near the EDCA and that PCMW has established relatively little connection between these operative facts and the Middle District of Florida, PCMW's choice of forum is entitled to only minimal deference. *See Motorola Mobility*, 2011 WL 3611825, at \*2 ("[T]he [patent infringement] claims raised in [plaintiff's] complaint only appear to have a limited connection with this District, [thus] only minimal deference will be given to Plaintiff's choice of forum."); *Herbert Ltd. v. Elec. Arts, Inc.*, 325 F. Supp. 2d 282, 291 (S.D.N.Y 2004) (affording plaintiff's choice of forum "relatively little weight" where "apart from some sale of the allegedly infringing products none of the operative facts in this case occurred in New York").

It is also undisputed that the MDFL is not PCMW's home forum. PCMW is a Canadian corporation with a principal place of business in Vancouver, British Columbia, Canada. (Doc. 69 ¶ 5). Moreover, PCMW provides no evidence or argument to support a finding that PCMW is connected to the MDFL. As previously discussed, "where a plaintiff has chosen a forum that is not its home

-15-

forum, only minimal deference is required, and it is considerably easier to satisfy the burden of showing that other considerations make transfer proper." *Cellularvision*, 508 F. Supp. 2d at 1189 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981)); *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983) ("A plaintiff who chooses a foreign forum substantially undercuts the presumption his choice is reasonable; because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a forum plaintiff's choice deserves less deference." (quotation omitted)). PCMW's choice of forum is entitled to minimal deference both because the operative facts underlying the present allegations did not occur in the MDFL and because the MDFL is not PCMW's home forum. Accordingly, this factor weighs only slightly against transfer.

## IX. Trial Efficacy and the Interests of Justice

Finally, the Court must take into consideration "those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'" *Stewart Org.*, 487 U.S. at 30. Courts in the Eleventh Circuit "have enumerated several factors to consider when assessing whether the interests of justice counsel in favor of venue transfer, [including a]ccess to evidence, availability of witnesses, the cost of obtaining witnesses, the possibility of a jury view, and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Tommy Bahama Grp., Inc. v. The Walking Co.*, No. 1:07-CV-1402-ODE, 2007 WL 3156254, at *3 (N.D. Ga. Oct. 19, 2007) (quotation omitted). Here, the interests of justice factor weighs in favor of transferring the case to the EDCA given that the vast majority of the evidence relevant to the present action is located in and around the EDCA, the majority of the key witnesses reside in and around the EDCA, the core of the action itself arises out of events occurring in and

-16-

around the EDCA, the case remains in its infancy in the MDFL, and PCMW has presented no evidence or argument establishing a connection between PCMW and the MDFL.

### Conclusion

Having carefully examined the parties' arguments and the evidence presented, the Court finds that the balance of the relevant factors warrants transfer of the present action to the Eastern District of California. Accordingly, Defendants' Joint Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Doc. 46) is **GRANTED**. The Clerk of Court is directed to transfer the instant action to the Eastern District of California and close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this _20_ day of September, 2011.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record